WILL OF RISHER: RISHER and others, Appellants, vs.
AMERICAN SURETY COMPANY OF NEW YORK, Respondent.

*November 11, 1937—March 15, 1938.*

106

*Chas. A. Taylor* of Barron, attorney for Beatrice C. Risher and Kate Elmira Hoar, and *A. C. Barrett* of Spooner, guardian *ad litem* for James Levi Risher, for the appellants.

For the respondent there was a brief by *Douglas & Omernik* of Spooner, attorneys, and *Orr, Stark & Kidder*

of St. Paul, Minnesota, of counsel, and oral argument by *Edward E. Omernik* and *Charles S. Kidder*.

The following opinion was filed January 11, 1938:

MARTIN, J. Counsel have exhaustively briefed and ably argued many questions on this appeal. There is a remarkable scarcity of authorities on the legal propositions here involved. The main contentions go to the question whether the trust created by the will of Mr. Risher is to be administered in Wisconsin or in Pennsylvania. The appellants contend that the administration of the trust is governed by the laws of Wisconsin. Respondent contends that the trust must be administered according to the laws of Pennsylvania. This is the principal and controlling issue. If the trust is to be administered in Wisconsin, under the direction of the courts of this state, then there has been no qualification by the trustee, and the executor and surety on its bond are still liable for the trust funds. There appears to be no material dispute as to the facts. The issue is one of law. The trial court has found that the testator intended the trust which he created to be executed and administered in Pennsylvania, under and pursuant to the laws of that state. We have carefully examined the evidence bearing on this finding and conclude that same is fully sustained.

"In respect to the dignity of a trust created by will, the supreme test is, What did the testator intend? That being discovered it is the law of that trust. Courts have no power to frustrate it and substitute a different scheme,— there can be no substitute method." *Upham v. Plankinton,* 152 Wis. 275, 284, 140 N. W. 5, 8.

"The power exercised by courts of equity to enforce the administration of trusts is a supervisory power. It is exerted to carry out the intention of the settlor. Courts of equity will do all within their power to see that the trust is executed in accordance with its terms." *Will of Stack,* 217 Wis. 94, 102, 258 N. W. 324, 327.

Anything designed to defeat the intent of the testator is against public policy. *Graef v. Kanouse,* 205 Wis. 597, 603, 238 N. W. 377.

"So we must conclude, not only that there is a constitutional right to make a will but that such right includes a right of equal dignity to have it carried out." *Will of Rice,* 150 Wis. 401, 450, 136 N. W. 956, 975, 137 N. W. 778.

The title and right of the trustee comes from the will itself. In *McWilliams v. Gough,* 116 Wis. 576, 585, 93 N. W. 550, 553, the court said of a testamentary trustee:

"Title vests in the latter under the will, where the devise or bequest is to him as trustee, and the will does not contemplate an interval between the death of the testator and the vesting of the title in such trustee,— not under the probate of the will or any mere order of the court, or under the statute requiring qualification of the trustee."

"The rights and status of a testamentary trustee, as such, flow exclusively from the will and not from proceedings on the will taken in court; neither probate nor letters of trusteeship being the foundation of his trusteeship, but the will itself." *Matter of Ripley,* 101 Misc. 465, 167 N. Y. Supp. 162.

The trial court found:

"The Pennsylvania Trust Company was fully qualified and authorized, under the laws of the state of Pennsylvania, to act in that state as trustee of the said trust and administer the same and was not required by said laws to give bond or receive appointment or letters from any court.".

Proof was made as to the authority of the Pennsylvania Trust Company to accept and execute trusts; also the fact that said trust company was relieved from giving bond to qualify and act as trustee. The Pennsylvania statute, Purdon's Statutes, Annotated, tit. 15, ch. 44, § 2511, provides:

"Whenever such companies shall receive and accept the office or appointment of assignees, receiver, guardian, execu-

tor, administrator, or to be directed to execute any trust whatever, the capital of the said company shall be taken and considered as the security required by law for the faithful performance of their duties as aforesaid and shall be absolutely liable in case of any default whatever."

The language "the capital . . . shall be . . . liable," etc., by the weight of authority means that the *cestuis que trustent* have a right of preference against all the assets of the trust company. *Parkinson v. State Bank of Millard County,* 84 Utah, 278, 35 Pac. (2d) 814, 94 A. L. R. 1112, and annotations, p. 1123.

In support of their contention that the trust in question is governed by the laws of Wisconsin, the appellants cite Restatement, Conflict of Laws, § 298, which provides:

"A testamentary trust of movables is administered by the trustee according to the law of the state of the testator's domicile at the time of his death *unless the will shows an intention that the trust should be administered in another state.*"

Comment *c* states:

"If the testator appoints as trustee a trust company of another state, presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore be administered according to the law of the latter state."

In view of the finding made by the court below, that Mr. Risher intended the trust to be executed and administered in Pennsylvania, under and pursuant to the laws of the state of Pennsylvania, and in view of the comment above quoted, it would appear that this trust comes within the exception in the Restatement, § 298. Said section and comment appear to support the respondent's position. In *In re Chappell's Estate,* 124 Wash. 128, 213 Pac. 684, the court said:

"The general rule undoubtedly is that, as applied to personal property, the law of the domicile governs. Various

reasons have been given for this rule, but none seems to us more satisfactory than that the testator is presumed to be familiar with the laws of his domicile; to have prepared his will in the light of those laws, and to apply any other law would be at great risk of defeating his intent, *unless it is manifest that the testator had the laws of some other place, or country, in view.*"

Mr. Risher made his will in Pennsylvania. He was then a resident of that state. He left the residue of his estate in trust to the South Side Trust Company of Pittsburgh (now the Pennsylvania Trust Company), to invest, manage, etc., until the youngest child reached twenty-one years, then to be divided among his wife and children. The will further provides, that in the event of the prior death of his wife and children, the income should be "divided among and quarterly paid to those who would be entitled to receive the same under the intestate laws of the state of Pennsylvania." The will further provides, as to principal, that in case of the prior death of both wife and children "the principal thereof shall be distributed among and vest in those who would· be entitled to take the same under the intestate laws of the state of Pennsylvania." Section 299 of the Restatement, Conflict of Laws, provides:

"The administration of a trust of movables is supervised by the courts of that state only in which the administration of the trust is located."

Illustrations:

"(2) A, domiciled in state X, dies bequeathing his personal property to B Trust Company, a corporation of state Y, upon trust. The B Trust Company applies to a court of Y, for directions. The directions will be given."

The location of the administration of a trust, or the situs of a trust, means the place of the performance of the active

duties of the trustee. Comment *a,* Restatement, Conflict of Laws, under section 297, says:

". . . The administration by the trustee is the action of the trustee in carrying out the duties of the trust. In what securities can he invest? What interest should he receive on investments? To whom shall he pay the income? To whom shall he render an account? These are questions of administration."

2 Beale, Conflict of Laws (1935), p. 1023, § 297.1, says:

". . . If the trustee is a bank or trust company, the almost inevitable inference is that the seat of the trust is at the principal office of the bank."

This author says:

"Any question which arises after the trust has come into being is a question of the administration of the trust. Such questions relate to the trustee's duties, the investments he may make, to whom he must pay income or principal, where he must account. . . . All matters of administration are determined by the law of the situs or seat of the trust. The situs of a trust must be determined by an interpretation of the words by which the trust is created. . . . As has been seen, all indications are considered, such as the intention of the parties, the place of business or domicile of the trustee, the location of the trust *res,* and other similar matters. The seat of the trust having been determined, the law of the state in which the trust is located will apply to its administration." Vol. II, p. 1024, § 297.2.

In *Greenough v. Osgood,* 235 Mass. 235, 237, 126 N. E. 461, 462, a single woman, residing in the state of New York, in contemplation of her marriage to a man residing in California, executed in Massachusetts a declaration placing in trust what she had inherited from her mother, who had resided in Massachusetts, and which consisted of real estate in Massachusetts, notes secured by mortgages on real estate in Massachusetts, and securities which were kept in Massachusetts in the hands of trustees who were Massachusetts

residents.   One of the provisions of the declaration was
that, in certain contingencies, the property should go to such
"person or persons as would, by the laws of the common-
wealth of Massachusetts, have been or be entitled to the
same."   After the marriage, the donor and her husband
lived for many years in California, then for many years in
Massachusetts, and then in New York, where she died and
her will was proved.   Upon a bill in equity by the trustees
for instructions, it was held that the donor intended that the
trust should be administered by the laws of Massachusetts,
and therefore that the Massachusetts court had jurisdiction
of the suit.   On this state of facts the court said (p. 237) :

"When the antenuptial agreement and trust were exe-
cuted in Massachusetts Hannah P. Newell resided with her
father in the city, county and state of New York and Ed-
ward S. Osgood was domiciled in San Francisco, Califor-
nia.   Immediately upon the marriage, Hannah P. Osgood
and her husband removed to California, where they resided
for many years.   Subsequently she removed with her hus-
band to Boston, where they resided for many years.   Finally
she removed to New York, where she died on October 9,
1918, leaving a will which was duly proved and allowed by
the surrogates court in and for the county and state of New
York.   Although the donor in her declaration of trust was
not domiciled in Massachusetts, we think it plain that she in-
tended that the trust should be administered under the laws
of that state, by the appointment of the trustees who were
residents of Massachusetts, by the fact that the trust prop-
erty consisted very largely of real estate and real estate
mortgages, located entirely in Massachusetts, by the provi-
sion of the trust instrument that the property in certain con-
tingencies should go to the 'person or persons as would, by
the laws of the commonwealth of Massachusetts have been
or be entitled to the same,' and by the further fact that the
Massachusetts trustees or trustee could at no time have been
compelled to account for the property in trust, in any state
other than Massachusetts.   *Sewall v. Wilmer,* 132 Mass.
131; *Codman v. Krell,* 152 Mass. 214, 218; *Russell v. Joys,*

227 Mass. 263. It follows that the Massachusetts courts have jurisdiction over the matters in issue."

The capacity of the Pennsylvania Trust Company to take and administer the trust is determined by the laws of its domicile,— the laws of Pennsylvania. 2 Wharton, Conflict of Laws (3d ed.), p. 1326, § 591(b); Minor, Conflict of Laws, p. 139, § 70; 91 A. L. R. pp. 491 to 508; Restatement, Trusts, § 96; *In re Hauge's Estate,* 92 Mont. 36, 9 Pac. (2d) 1065. The Restatement, Trusts, § 96, says:

"(2) The extent of the capacity of a corporation to administer a trust depends upon the extent of the powers conferred upon it by law."

Appellants cite section 306 (b) of the Restatement, Conflict of Laws, to the proposition that the capacity of the legatee to take,—in the instant case, the Pennsylvania Trust Company,—must be determined by the laws of Wisconsin, and they quote as follows:

"The law of the state of the domicile of a testator determines his capacity to make a will, the form necessary to make a valid will, the validity of a particular provision in the will, the nature of the estate created, and the capacity of a legatee to take his legacy."

However, an exception is stated, and is as follows:

"In case of a legacy to a corporation, the question whether the acceptance of the terms of the gift is within the purposes of incorporation is determined by the law of the state of incorporation."

The Wisconsin statutes on appointment and qualification of trustees and supervision of administration apply only to trusts requiring or involving administration in Wisconsin. The trial court found that:

"Said trustee did not, in and about the acceptance and handling of said trust and trust assets, do any of the business of said trust in the state of Wisconsin."

The appellants' contention that no matter where the trust was to be administered, it was the duty of the trustee to comply with the Wisconsin statutes, sec. 323.01, sec. 223.12, and sec. 223.02, and to receive appointment as such trustee by the county court of Washburn county, cannot be sustained. If that were the law applicable in every trust, there could be no foreign trust established or recognized in the probate of a will in this state. If the trustee must give bond and qualify as provided by the Wisconsin statutes, to receive and execute a foreign trust, it follows that the trust would have to be executed under the direction of the Wisconsin court. Only such trust investments could be made as are permitted under the Wisconsin law. If there was a resignation of the trustee or trustees, the Wisconsin court would be called upon to name the successor or successors to execute the foreign trust. We agree with the conclusion of the learned trial judge that the trust in question must be administered under the laws of the state of Pennsylvania. The Pennsylvania Trust Company was authorized and qualified to receive the trust assets when paid over to it on July 25, 1931, by the executor. The investments to which the appellants objected, and which comprised the item of surcharge against the executor's account in the citation proceedings, were made by the Pennsylvania Trust Company as trustee and not as executor. No objection was made to the executor's final account, nor to the final judgment as entered thereon in July, 1931. Pursuant to the final judgment, all of the personal estate was assigned to the trust company in its capacity as trustee under the will. The citation proceedings resulting in the surcharge against the executor's account in the sum of $32,331.50 were approximately five years after the entry of final judgment. The decision of the trial court is correct and must be affirmed.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I do not disagree with what is said in the opinion of the court about trusts created by will being administered by the trustee named in the will in the state where the trust property is situated, according to the laws of that state and under the supervision of the courts of that state having jurisdiction of the administration of such trusts, when the testator so intends, after the trustee has rightfully assumed his duties as trustee. But all this to my mind is beside the instant case. A trustee under a will is not administering the trust as trustee while the trust property is in the hands of the executor. If the same person is both executor and trustee, he is administering the trust property as executor and not as trustee until he has been discharged as executor. One appointed as executor remains executor until he is discharged as such, and while he remains executor he must account as executor to the court that appointed him. The Pennsylvania Trust Company, named both as executor and trustee in the will that created the trust involved, upon whose bond as executor the respondent Surety Company is surety, was appointed executor by the county court of Washburn county. It was never discharged as executor, and it therefore remained executor up to the time it was cited by that court to account as executor. This is the established law of this state, and it has been very recently so declared. *McWilliams v. Gough,* 116 Wis. 576, 93 N. W. 550; *Karel v. Pereles,* 161 Wis. 598, 155 N. W. 152; *Estate of Thompson,* 212 Wis. 172, 248 N. W. 167. Under the *McWilliams Case, supra,* where a person named by a will as both executor and trustee is appointed by the court as executor and later, on presentation of an account as executor, denominated his final account, the account is approved and the trust property is by the terms of the order of the court assigned to him as trustee, as is the case here, his duties as trustee do not begin until his duties as executor are termi-

nated, and his. duties as executor are not terminated until he has qualified by filing a bond as trustee and is discharged as executor. This follows, although the title to the trust property has passed to the trustee. In the *McWilliams Case* the trust property was real estate, and the title thereto passed to the trustee by the will. That the title so passed was held not to empower the named trustee to handle it as trustee until he was relieved from his duty to handle it and account for it as executor by act of the court discharging him from that duty. Thus the order of the county court, that by its terms assigned the trust property in the instant case to the Pennsylvania Trust Company as trustee, did not empower it to handle it as trustee until it was discharged as executor. In the *McWilliams Case* the executor was never discharged as such, and the person named as executor and trustee under the will never became empowered to act as trustee at all. Such was the situation in the *Karel Case, supra.* In the *Thompson Case* the person appointed as executor and named in the will as trustee, although his final account, so called, as executor was approved and he was formally appointed as trustee, remained executor for ten years, and was administering the trust property as executor for that period until he qualified as trustee by giving bond as trustee, after which time he was administering the trust as trustee. While he remained as executor his bond as executor bound the bondsman thereon.

It may be argued that the rule in the cases cited, that one named as both executor and trustee cannot be deemed to be acting as trustee until he is discharged as executor, rests on the fact of failure to file a bond as trustee. In the *Thompson Case, supra,* it is stated, page 180, that liability as executor continues until the executor gives bond as trustee *and is discharged* as executor, and page 182, that one named as both executor and trustee cannot discharge himself as execu-

tor merely by giving and filing a receipt as trustee. With less reason can he so discharge himself, as here, merely by heading his account upon his books as trustee instead of as executor. The fact back of the ruling, the fact that rendered the appointment as trustee nonoperative and prevented assumption of duty as trustee, was that the executor did not become discharged as executor until he had qualified as trustee. The ultimate fact that held him as executor was that he was not discharged as executor. That one named both executor and trustee under a will remains accountable as executor until the court has entered an order discharging him as executor, either expressly or by language plainly indicating intent and understanding that he stands discharged as executor, is held in *Newcomb v. Williams,* 50 Mass. 525; *Scheffer's Estate,* 58 Minn. 29, 59 N. W. 956; *Higgins' Estate,* 15 Mont. 474, 39 Pac. 506; *In re Roach's Estate,* 50 Or. 179, 92 Pac. 118. There was no order of discharge by the county court in the instant case, or anything to indicate that the court intended or understood that the defendant should stand discharged as executor until he had informed the court of the transfer of the trust estate in accordance with the order entered upon the approval of the account and given a bond as trustee. Both the named trustee and the respondent bondsman understood that liability as executor continued. This is evidenced by the fact that the named trustee continued to pay premiums to the bondsman to keep the executor's bond in force up to the time the trust property was transferred to its successor. Thus neither of them considered that the named trustee was discharged as executor. When neither of them so understood it cannot be presumed that the county court so understood.

It is conceded that the law of this state is as above stated as applied to trust property located within the state, but it is claimed that as the instant property was located in Pennsyl-

vania, and the court found that it was the intent of the testator that the trust be administered in Pennsylvania and according to the laws thereof, that the rule stated does not here apply.

With this I do not agree. Notwithstanding that the court found that no bond is required in Pennsylvania of a trustee under a will (I doubt the correctness of this finding for it appears that the successor trustee was in fact required to and did give a bond in Pennsylvania), this did not disempower the county court from requiring that the defendant give a bond to account as trustee before it would relieve him from liability to account as executor. Even though a will provides that an executor or trustee be not required to give a bond, the court may require that a bond be given. It is the common practice in Milwaukee county to require a bond of trustee in such cases, as has appeared from numerous cases from that court that have come to this court for review. It has been expressly so held as to an executor. *Schnorenberg v. Schnorenberg,* 150 Wis. 537, 137 N. W. 752. The provision of a will that a trustee be relieved from giving bond can be no more potent than like provision as to an executor, and the provision of the law of the state wherein trust property is located that a trustee under a will need not give a bond before acting as trustee in that state can be no more potent to deprive the court probating the will to require a bond before it will discharge him from accounting as executor than is the provision of a will. Upon reason a court probating a will has power and jurisdiction to require a bond from a trustee under the will who is also executor of the will for the protection of the beneficiaries of the trust resident in the state of the court of probate before it will discharge him as executor, even though the trust estate be outside that state. The court has jurisdiction of the executor although he be a nonresident and the estate be located in the state of his resi-

dence. The question is not one of executing a trust created by will according to the law of the state of which the trustee is a resident and the trust estate is situated, but of acting for the protection of citizens of this state by requiring a bond as trustee before the court will relieve the executor from accounting as executor. That the law of the foreign state permits a trustee to act without giving a bond affords more reason for the court to require one to be given before it will discharge him as executor. The bond in such case should not require the trust estate to be administered according to the law of Wisconsin under the circumstances here present, but if deemed necessary for the protection of citizen beneficiaries the court has power and should require a bond to be given requiring administration as trustee according to law. I find no cases either way upon the proposition that the probate court has power to require a bond of a trustee under the circumstances present, but where bonds of executors named in a will are not required, as in England and some states, the court is held to have power to require bonds from them for the protection of persons interested in the estate whenever it deems a bond necessary for their protection. See 2 Woerner, Law of Administration, p. 831 *et seq.,* and cases cited. If a court may require a bond of an executor when not required by statute, it may require one of a trustee when not so required. A bond was required by the Pennsylvania orphans' court from the successor trustee, even though, if as counsel testified, it is not required by statute. While the powers of the probate courts of this state are limited by statute, the provisions of our statute, sec. 253.03, that the jurisdiction of county courts in probate extends "to all matters relating to the settlement of the estate" of deceased persons and "to all cases of trusts and trust powers created by will admitted to probate" therein, are ample to empower the court to require a bond as trustee from an executor named

as both executor and trustee before it will discharge him as executor, even though the trust is to be administered outside the state.

There is no injustice in this case in holding the respondent surety on the executor's bond. For several years it received a premium for continuing the bond in force. The consideration for these premiums was the agreement of the bondsman that the named trustee would perform its duties as executor. By executing the bond it assumed responsibility for the administration of the trust property by the executor as executor. It should not be heard to say that the named trustee was not functioning as executor when for a consideration it agreed that it was so functioning and guaranteed it would perform its duty as executor.

I think that the court, instead of ruling that the named trustee was not bound to account as executor, should have held it bound so to account, and considered its account on the merits. What those merits are I have not considered. My dissent is based solely upon the proposition that the named trustee was never discharged as executor and was subject to account as executor until it was so discharged.

A motion for a rehearing was denied, without costs, on March 15, 1938.